GASKINS, J.,
dissenting.
_JjI respectfully dissent from the majority opinion and would affirm the requirement of security, but would reverse and remand for limitation of the time security is required.
The city has the authority to impose restrictions upon the sale of alcoholic beverages that support the safety and peace of the neighborhood. La. R.S. 26:493 states, in part, that “No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.” Hence, the municipality may regulate the sale of alcohol at RaeeTrac if it is necessary to protect the public health, safety and peace of the area in which this RaeeTrac is located, and revoke the special exception use if these regulations are violated. Shreveport Code of Ordinances, Section 106-1127 also gives an illustrative, not exclusive, list of conditions that may be imposed on businesses with a special exception use. A requirement of security fits within this list of potential conditions, which are designed “to protect the adjacent or nearby property and uses.”
The evidence showed that there are crimes, disturbances, large crowds, noise and littering, and traffic issues which affect the safety of anyone traveling in that area, and more particularly, impinge on the public |2health, peace, and safety of those living nearby. The majority concedes the security and annual renewal conditions fit under the state and municipal law, ‘We readily agree that had RaeeTrac violated the laws directly related to its special exception use and the sale of alcohol, that the City Council would have been clearly within its province in restricting the special exception use in such a way.” However, the majority found that the *809 crimes and disturbances were not directly related to the sale of alcohol.
The majority fails to see a link between the problems suffered by this neighborhood and the special exception use for the sale of alcohol, noting that the printout of the crimes does not specify any alcohol violations. The RaceTrac is not being accused of violating the law as it pertains to selling alcohol. Those testifying on behalf of the security and annual renewal requirement (Shreveport police officers, RaceTrac patrons, and the neighborhood residents) had the opinion and experience that alcohol sales play a significant part in the problems that plague this business.
The majority finds that the imposition of the security and annual renewal conditions are non-uniform because these requirements are not imposed on other gas stations selling alcohol in the same area, or other RaceTrac gas stations. The clear reason is that the nearby gas stations and other RaceTrac stations do not suffer the same problems as this particular Race-Trac. It is the combination of factors (the size of the RaceTrac, the location of the RaceTrac, the heightened neighborhood crime, the large crowds, and the availability of alcohol) that creates the perfect environment for these magnified problems to occur. The majority also points to the fact | sthat, on RaceTrac’s initial application, these conditions were not imposed. Before the RaceTrac opened, these problems had not arisen. These conditions were imposed in response to the situation that evolved after RaceTrac was granted its first special exception use.
The majority implies that the police should handle the disturbances that arise at RaceTrac. When the problems are as prevalent and constant as in this case, the financial onus should be placed on the business which profits from the sale of alcohol. Certainly, the RaceTrac should not expect the Shreveport Police to take one of its officers working in the area and assign the officer solely to secure the RaceTrac premises.
The majority quotes the City Council’s description of the problems at the Race-Trac as “gathering,” “loitering,” “cruising,” and “parading.” These disturbances are far beyond the normal high-traffic activity common to most RaceTracs. In fact, this RaceTrac has become the “party central” of that area. The imposition of a security requirement and the annual renewal of the special exception use are reasonable preventative measures to combat these problems. As the majority quotes, “whenever the propriety of a zoning decision is debatable, it will be upheld.” Likewise, this zoning decision should be upheld.
I do agree with the majority that the time the security is imposed appears to be too broadly required, and the record was not clear as to whether the nexus between the crowds and alcohol sales is constant between the hours of 5 p.m. to 3 a.m., seven days a week. I would remand so that the security requirement can be tailored to those times and days when the disturbances have routinely been a problem.